William C. Lyle and Theresa M. Lyle v. Commissioner.
Lyle v. Commissioner
Docket No. 5298-69.
United States Tax Court
T.C. Memo 1971-324; 1971 Tax Ct. Memo LEXIS 9; 30 T.C.M. (CCH) 1412; T.C.M. (RIA) 71324; December 23, 1971, Filed. Sylvester F. Sabbatino, Jr., for the petitioners. Fred L. Baker, for the respondent. SCOTT Memorandum Findings of Fact and Opinion SCOTT, Judge: Respondent determined deficiences in petitioners' income taxes for the calendar years 1966 and 1967 in the amounts of $4,732.11 and $3,385.45, respectively. One of the issues raised by the pleadings has been conceded by petitioners, leaving for our decision whether a corporation of which one of petitioners was the sole shareholder filed a timely election under section 1372(c)(1), I.R.C. 1954[1] to be taxed as a small business corporation under the provisions of subchapter S so *10 as to entitle petitioners to deduct the net operating losses of the corporation. Findings of Fact Some of the facts have been stipulated and are found accordingly. Petitioners, husband and wife whose legal residence at the time of the filing of the petition in this case was in Forest Hills, New York, filed joint Federal income tax returns for the calendar years 1966 and 1967 with the district director of internal revenue, Brooklyn, New York. William C. Lyle, also known as William C. Ligorio (hereinafter referred to as petitioner), entered into an agreement on April 25, 1966, for the purchase of a liquor store located at 135 East 53rd Street, New York, New York, and presented to the seller or the seller's representative as a deposit, a check in the amount of $500. This agreement provided that the $500 would be held in escrow and that within 7 days the parties would execute a formal agreement embodying the conditions of the sale, and that the purchaser would file his application for a liquor license with the Alcoholic Beverage Control Board within 10 days. The agreement further provided that the seller would, at *11 the final closing, deliver a lease assigned to the buyers running until January 31, 1972. Petitioner was in the real estate business and one of the primary reasons he decided to purchase the liquor store 1413 business was in order to acquire the lease on the premises on which the business was operated. The final sale of the business was not to be consummated until petitioner acquired a liquor license from the Alcoholic Beverage Control Board of the State of New York. After signing the agreement on April 25, 1966, petitioner was advised by the real estate broker who negotiated the sale to obtain the service of a lawyer in making his application to the Alcoholic Beverage Control Board. The lawyer advised petitioner to form a corporation to operate the liquor store. On May 9, 1966, Bluebeard Wines & Liquors, Inc. (hereinafter referred to as Bluebeard), was organized and incorporated by the filing of a certificate of incorporation with the New York Department of State along with the payment of the required fee and taxes in the amount of $60. The certificate of incorporation recited that the office of the corporation was to be located in the Borough of Manhattan, County, City and *12 State of New York, and this has been the principal office of Bluebeard since its incorporation. Bluebeard was authorized to issue 200 shares of common stock without par value. The stock certificate book of Bluebeard shows Certificate No. 1 for 100 shares issued to petitioner, dated May 1966. Under date of May 16, 1966, petitioner signed a certification of an application by Bluebeard for a liquor license for operation of a retail liquor store at 135 East 53rd Street, New York City, stating that he was president of the corporation and knew the contents of the application and the statements and answers to questions therein to be true. In this application the statement is made that the authorized capital stock is 200 shares, the issued shares are 100, and petitioner is the sole stockholder of the corporation owning the 100 issued shares which he acquired on May 10, 1966. The application also shows petitioner as the president and secretary of the corporation and as the only member of the board of directors of the corporation. On May 11, 1966, an agreement was entered into between Bluebeard as the buyer and the same individual with whom petitioner had entered a contract on April 25, 1966, as *13 the seller, for the purchase by Bluebeard of the retail liquor store at 135 East 53rd Street. This contract spelled out the terms of the purchase and specifically provided for the assignment to Bluebeard of the lease on the premises at 135 East 53rd Street for the period running to January 31, 1972, and for closing of the sale after Bluebeard had received its liquor license and that in the event the liquor license should be refused to Bluebeard for reasons beyond its control, the agreement would be null and void and all moneys paid thereunder by the buyer returned to the buyer. At the time of the execution of this agreement Bluebeard was required to pay an additional $1,500 to the seller and petitioner paid this amount to the seller. Petitioner agreed to pay the attorney for his service in incorporating Bluebeard and pursuing its application for a liquor license the amount of $500 and at the time of engaging the attorney's service $200 of this amount was paid to him. On May 23, 1966, petitioner paid to the New York State Liquor Authority, in connection with Bluebeard's application for a liquor license, the license fee of $899.17. Certain investigations were made in connection with *14 the issuance of a liquor license to Bluebeard. Because of delays by petitioner in furnishing answers to certain questions; and finally because of petitioner's being on a trip to Europe in mid-August 1966 when the application for issuance of the license was approved subject to the assignment of the lease to Bluebeard and verification of certain earnings of petitioner from the real estate business, a retail liquor store license was not issued to Bluebeard until September 16, 1966. Bluebeard began doing business on September 19, 1966, the Monday following the date of the issuance to it of the liquor license. Petitioner as a part of his 1966 Federal income tax return filed a Schedule C, Profit (or Loss) from Business or Profession, on which he showed the name of the business as Bluebeard Wines & Liquors, Inc., and the address as 135 East 53rd Street, New York. On this Schedule C petitioner reported a loss of $8,007.62. In June or early July of 1967 petitioner contacted a certified public accountant whose office was in the same building as the office of the real estate broker by whom petitioner was employed. He informed the accountant that he was attempting to file either a form 1120 *15 or 1120-S for Bluebeard and was having trouble preparing the balance sheet part of it. The accountant told petitioner that he could not prepare a balance sheet without doing the necessary work to arrive at the figures to place on the balance sheet. Petitioner told the 1414 accountant that he had elected to be taxed as a small business corporation and showed the accountant a form 2553 "Election by Small Business Corporation," which was marked at the top "Copy." The document was filled in in blue ink, apparently written with a ball point pen. It carried the name of Bluebeard with the address of 135 East 53rd Street, New York, New York; carried under date submitted September 24, 1966; and under election to be effective for the taxable year beginning, carried the date September 19, 1966; under date incorporated, stated September 1966; carried the statement that petitioner was the sole shareholder; was signed by petitioner as president with the date September 24, 1966. Attached on yellow-lined paper was a handwritten document in ink, apparently also written with a ball point pen, entitled "Consent of Stockholder" which read: I, William C. Logorio, sole stockholder of Bluebeard Wines *16 & Liquors Inc. of 135 East 53rd Street, Borough of Manhattan, New York City, New York State do hereby consent to the corporate election. Date September 24, 1966 Bluebeard Wines & Liquors Inc.
/s/ William C. Ligorio, President The accountant prepared a form 1120-S for 1966 which he designated as a "corrected tax return" and transmitted to petitioner. In March 1968 Bluebeard filed a form 1120-S for the calendar year 1967 showing as the date of election as small business corporation "9-24-66." This form 1120-S was prepared by the accountant whom petitioner had contacted in the summer of 1967 and was signed by petitioner as president of Bluebeard. This return showed a loss on the operation of Bluebeard of $7,357.89. Respondent caused a search to be made for any form 2553 filed by Bluebeard as well as any forms 1120-S filed by Bluebeard for 1966 or 1967. The only form 2553 which was shown as having been filed by Bluebeard by respondent's records was such a form and election dated January 31, 1969. This form was filled out by the same accountant who had filled out the "corrected 1966 return" of Bluebeard and the form 1120-S for 1967 for Bluebeard after a question had arisen *17 as to whether Bluebeard had made an election for previous years. Respondent's search resulted in locating no form 2553 filed prior to the one filed January 31, 1969. However, respondent located a microfilm record containing a coded listing of the names of various corporations, among the names listed being that of Bluebeard. The interpretation of the coded listing is that under date of July 6, 1967, an entry was made that Bluebeard Wines & Liquors, Inc., was "not liable - this taxpayer only" for a form 1120. Petitioner on his 1966 and 1967 income tax returns deducted the operating losses of Bluebeard in the amounts of $8,007.62 and $7,357.89, respectively. Respondent in his notice of deficiency disallowed these claimed losses with the explanation that petitioner had not established that he was entitled to deduct the losses. Opinion Section 1372 provides that a small business corporation may elect, in accordance with the provisions of that section, not to be subject to the income taxes imposed on corporations. Section 1372(c)[2] provides for where and how the election is to be made. This section provides that the election may be made for any taxable year at any time during the *18 first month of such taxable year, or at any time during the month preceding such first month and that such election should be made in such manner as the Secretary or his delegate shall prescribe by regulations. Section 1.1372-2, Income Tax Regs., provides for the manner and time for making election and filing shareholders' consent. [3] 1415 The provision as applicable to the years here in issue is that the election should be made by filing a form 2553 with the district director with whom the return required *19 under section 6037 is to be filed. This regulation further provides that in the case of a new corporation whose taxable year begins after the first day of a particular month the term "month" means "the period commencing with the beginning of the first day of the taxable year and ending with the close of the day preceding the numerically corresponding day of the succeeding calendar month." This section states that the "first month of the taxable year of a new corporation does not begin until the corporation has shareholders or acquires assets or begins doing business, whichever is the first to occur." *20 We have held respondent's regulation with respect to the first month of a taxable year of a new corporation to be reasonable. Thos. E. Bone, 52 T.C. 913, 920 (1969). Therefore, since Bluebeard had a shareholder, petitioner, in May 1966, any election filed by Bluebeard after June 1966 would be untimely. Petitioner does not contend that any election was filed prior to September 1966. Petitioner does not explain why he considers that an election filed in September 1966 would be timely. If for some reason petitioner considered that he was not a shareholder of Bluebeard until Bluebeard actually commenced operation his viewpoint is in error. Petitioner had paid out money on behalf of Bluebeard at the time it was incorporated and had been listed on the stock certificate books as having 100 shares of stock issued to him. Also, petitioner had represented to the New York Alcoholic Beverage Control Board that the 100 shares of stock of Bluebeard were issued to him on May 10, 1966. We think, unquestionably, petitioner was a shareholder of Bluebeard as of May 1966. See Sarasohn v. Andrew Jergens Co., 45 N.Y.S. 2d 888, 891 (Sup. Ct., 1943). However, even if petitioner *21 were entitled to file an election for one month following September 19, 1966, when Bluebeard commenced business, the evidence in this case is insufficient to show that any such election was filed during that period. Petitioner testified that he filed a document similar to the ink handwritten document marked "Copy" which he had furnished to his accountant with the office of the district director in Jamaica, New York on a Friday which he thought was Friday, September 23, 1966. Petitioner stated that his personal tax returns for years prior to 1966 were being investigated by an agent in the Jamaica office and he went to that office often, always on Friday. Petitioner stated that some of the agents in the Jamaica office told him he should file an election to be taxed as a small business corporation and gave him copies of the form 2553. The Jamaica office was not the proper district director's office with which to file such an election since the principal office of Bluebeard was in Manhattan and any election should have been filed, under the Commissioner's regulations, with the district director in Manhattan. However, a more important factor is that in our view any discussions petitioner *22 had with internal revenue agents concerning an election to be taxed as a small business corporation do not appear from the record as a whole to have taken place until June or July of 1967. Piecing all of the unsatisfactory testimony together, we conclude that at some 1416 time in the summer of 1967 petitioner became aware, probably from some discussion with an employee of the Internal Revenue Service, that he was not entitled to take the loss of Bluebeard for 1966 as a personal business loss and should not have showed this loss on schedule C filed with his own return as if it were his own business loss. He was also, probably at that time, informed of the necessity of filing an election to be taxed as a small business corporation and of the filing by the corporation of a small business corporation tax return in order that he personally might claim the loss. After obtaining this information, petitioner saw an accountant who inquired with respect to Bluebeard's election to be taxed as a small business corporation. He then filled out such an election showing the dates as shown on the form 2553 marked "Copy" which he gave to his accountant. Whether petitioner actually ever took a *23 form 2553 to the office of the district director in Jamaica, we need not decide since this record totally fails to establish that such an election was taken to the Jamaica office or any other office of respondent at any time during the year 1966, and there is nothing in the record to show that any election was filed in January 1967. On the basis of the record as a whole, we conclude that petitioner did not file a timely election to be taxed as a small business corporation for either the year 1966 or 1967. Decision will be entered for respondent. Footnotes
1. All references are to the Internal Revenue Code of 1954.↩
2. Sec. 1372(c) Where and How Made. - (1) In general. - An election under subsection (a) may be made by a small business corporation for any taxable year at any time during the first month of such taxable year, or at any time during the month preceding such first month. Such election shall be made in such manner as the Secretary or his delegate shall prescribe by regulations. * * * (d) Years for Which Effective. - An election under subsection (a) shall be effective for the taxable year of the corporation for which it is made and for all succeeding taxable years of the corporation, unless it is terminated, with respect to any such taxable year, under subsection (e).↩
3. Sec. 1.1372-2, Income Tax Regs. (applicable to years prior to 1969) 1960-1 C.B. 324, 325 provided as follows: Sec. 1.1372-2 Manner and Time for Making Election and Filing Shareholders' Consent. - (a) Manner of making election. - The election of a small business corporation should be made by the corporation by filing Form 2553, containing the information required by such form, and by filing, in the manner provided in Sec. 1.1372-3, a statement of the consent of each shareholder of the corporation. The election form shall be signed by any person who is authorized to sign the return required under section 6037 and shall be filed with the district director with whom such return is to be filed. (b) Time of making election. - (1) Taxable years beginning on or after September 3, 1958. - For taxable years beginning on or after September 3, 1958, the election shall be filed either (i) during the first month of such taxable year, or (ii) during the month preceding such first month. In the case of a new corporation whose taxable year begins after the first day of a particular month, the term "month" means the period commencing with the beginning of the first day of the taxable year and ending with the close of the day preceding the numerically corresponding day of the succeeding calendar month or, if there is no such corresponding day, with the close of the last day of such succeeding calendar month. For purposes of this subparagraph, the first month of the taxable year of a new corporation does not begin until the corporation has shareholders or acquires assets or begins doing business, whichever is the first to occur. T.D. 7012, approved May 12, 1969, changed sec. 1.1372-2(a) to read as follows: Sec. 1.1372-2 Manner and time for making election and filing shareholders' consent. (a) Manner of making election. The election of a small business corporation should be made by the corporation by filing Form 2553, containing the information required by such form, and by filing, in the manner provided in Sec. 1.1372-3, a statement of the consent of each shareholder of the corporation. The election form shall be signed by any person who is authorized to sign the return required under Section 6037 and shall be filed with the internal revenue officer designated in the instructions applicable to Form 2553.↩